# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HENRIK PIPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 09 CV 1220 |
| v. | ) | |
| | ) | |
| DPFA, INC. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This suit arises from allegations by plaintiff, Henrik Piper ("plaintiff"), that defendant DPFA Inc. ("defendant") failed to pay the full price for an artwork it agreed to purchase from plaintiff. Defendant alleges that it had not reached a final agreement with plaintiff, or, alternatively, that any contract reached between them is unenforceable due to fraud, mutual mistake, or negligent misrepresentation. Plaintiff now moves to dismiss and/or strike defendant's affirmative defenses of mutual mistake and fraud (two counts out of four total) and the portion of defendant's counterclaim for mutual mistake, fraud, and negligent misrepresentation (three counts out of four total). The motion is denied [dkt 43].

**I.    Facts**

Unless stated otherwise, the following facts are taken from defendant's proposed amended pleadings. This is a diversity case between plaintiff, a resident of the United Kingdom, and defendant, a resident of Illinois. In August and September 2008, defendant (on behalf of principal Art Editions, Inc.) was negotiating with plaintiff's agent Arianne Levene ("Levene") for the

purchase of a 2006 sculpture by Subodh Gupta, which was owned by plaintiff.[1] The artwork was entitled "Used Stainless Steel Utensils" ("the Sculpture").[2] Levene was an art dealer with New Art World, Ltd.[3] On August 21, 2008, defendant emailed Levene and asked her "[t]his piece is unique, not editioned?"[4] Levene emailed back, "[n]ot a hundred percent sure but believe so."[5] After subsequent emails sent on August 31 and September 2 setting the price and the payment terms, Levene sent defendant an invoice on September 4, 2008.[6] The invoice lists the work as "Subodh Gupta, Untitled, 2006, Used stainless steel utensils, 122 x 30 x 26 cms" and lists the price as USD 220,000.[7] After defendant received the invoice he wired $30,000 to plaintiff pursuant to the August 31 and September 2 emails.[8] Defendant has not wired any more money to plaintiff.[9]

On or before December 11, 2009, defendant learned that the Sculpture was not a unique piece but was, instead, was one of three editions.[10] This allegedly would have made the Sculpture worth approximately $40,000 in September 2008 as opposed to $220,000.[11] Furthermore, defendant alleges its principal would have been unwilling to purchase a non-unique work.[12]

According to defendant, it is industry custom that if an invoice for a work does not state that the work is an edition or copy, the work is a unique piece.[13] Defendant had not investigated the Sculpture's uniqueness before September 4, 2008 because Levene had asked defendant not to

---

[1] Def.'s 2nd Am. 1st Affirmative Defense, Am. 4th Affirmative Defense, and 2nd Am. Counterclaim (hereinafter "Proposed Am. Counterclaim"), dkt 39, exh. 1, ¶ 1.
[2] Proposed Am. Counterclaim, ¶ 1.
[3] Pl.'s Am. Compl., dkt 16, exh. 1.
[4] Proposed Am. Counterclaim, exh. B.
[5] *Id.*
[6] Pl.'s Compl., dkt 1, exh. 2.
[7] *Id.*
[8] Pl.'s Am. Compl., dkt 16., ¶¶ 11-12.
[9] *Id.* at ¶ 13.
[10] Proposed Am. Counterclaim, dkt 39, exh. 1, exh. C.
[11] Proposed Am. Counterclaim, dkt 39, exh. 1, ¶ 9.
[12] *Id.*
[13] *Id.* at ¶ 3.

contact Gupta or his main US dealer.[14] Gupta sold many works through Levene and had sold plaintiff the Sculpture for his personal collection as a favor to Levene.[15] Levene believed that if Gupta learned plaintiff had sold the Sculpture that Gupta would no longer sell his work through Levene.[16] Defendant further claims that it is not customary in the industry for dealers to contact artists directly and that he and Levene had developed a trust relationship through a history of mutual dealings.[17]

## II.    Procedural History

Plaintiff originally sued defendant for breach of contract for not paying for the Sculpture.[18] In response, defendant first filed three affirmative defenses and a counterclaim, which claimed that the contract was unenforceable due to fraud because plaintiff gave the wrong date for the artwork.[19] After plaintiff amended his pleadings, defendant amended his first affirmative defense, added a fourth affirmative defense alleging mutual mistake, and amended his counterclaim of fraud to be based on plaintiff falsely claiming the artwork to be unique.[20] Then plaintiff filed a motion to dismiss the amended and additional defenses, and counterclaim.[21] Thereafter, defendant sought leave to amend the first affirmative defense of fraud, the fourth affirmative defense of mutual mistake, and its counterclaim to include counts of negligent misrepresentation, breach of contract, and rescission due to mutual mistake, as well as fraud.[22] Defendant filed copies of the proposed amendments with

---

[14] Proposed Am. Counterclaim, dkt 39, exh. 1, ¶ 8.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] Pl's Compl., dkt 1.
[19] Def's Answer, dkt 10.
[20] Amended Affirm. Def. and Counterclaim, dkt 34.
[21] Dkt 35.
[22] Dkt 39.

its motion.[23] This Court then terminated plaintiff's first motion to dismiss as moot, entered and continued defendant's motion for leave to file its amendments [dkt 39], and at the same time gave leave to plaintiff to file a new motion to dismiss [dkt 43]. It is this motion that is now before the Court.

## III.   Legal Standard

Rule 8 of the Federal Rules of Civil Procedure require a pleading to be to be "a short and plain statement of the claim showing that the pleader is entitled to relief."[24] Pleadings must give notice of the pleader's claims and the grounds on which they rest.[25] A claimant must allege enough facts to render the claim facially plausible.[26] On a motion to dismiss, the court accepts the complaint's allegations to be true.[27] On a motion to strike, a court has the discretion to strike insufficient defenses or "any redundant, immaterial, impertinent, or scandalous matter."[28] A party does not need to explicitly plead facts to establish every element of a pleading.[29] In response to pleadings, a party must affirmatively state any affirmative defense, including fraud.[30] Mutual mistake is also held to be an affirmative defense.[31]

Rule 9(b) of the Federal Rules of Civil Procedure requires a party who alleges a claim or components of a claim, including fraud or mistake, to state with particularity the circumstances of the fraud or mistake.[32] To do so, the pleader must state the "the who, what, when, where, and how"

---

[23] Dkt 39.
[24] Fed. R. Civ. P. 8(a)(2).
[25] *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
[26] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).
[27] *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009).
[28] Fed. R. Civ. P. 12(a).
[29] *Sanjuan v. Am. Bd. of Psych. and Neuro., Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), *as cited in Truesdale v. Guerra*, 2008 WL 1968773, *2 (N.D. Ill. 2008).
[30] Fed. R. Civ. P. 8(c).
[31] *MAN Roland Inc. v. Quantum Color Corp.*, 57 F.Supp.2d 576, 581 (N.D. Ill. 1999).
[32] Fed. R. Civ. P. 9(b).

of the fraud or mistake, but not necessarily the evidence of the fraud or mistake.[33] Negligent misrepresentation, however, does not have to be pled with particularity.[34]

## IV. Analysis

Plaintiff has not claimed that defendant's pleadings gave inadequate notice of defendant's allegations, nor has plaintiff alleged that defendant's fraud and mistake pleadings fail to assert the "who, what, when, where, and why" of fraud or mistake. But plaintiff does generally argue that defendant's amended pleadings fail to allege various elements required for each claim. Our analysis will discuss each of the disputed elements but, as a reminder, we note that "any need to plead facts that, if true, establish each element of a 'cause of action' was abolished by the Rules of Civil Procedure in 1938... ."[35] Though pleading requirements necessitate at least the possibility of the claim being true, so we must discuss the elements necessary to prove mutual mistake, fraud, and negligent misrepresentation in Illinois.

### A. Fourth Affirmative Defense and Count III of Defendant's Counterclaim - Rescission due to Mutual Mistake

Defendant's Count III of its Second Amended Counterclaim and its Amended Fourth Affirmative Defense, which incorporates the pleadings of Count III,[36] plead that the original agreement to purchase the Sculpture is unenforceable due to mutual mistake and should be rescinded due to mutual mistake. Defendant alleges that because both plaintiff and defendant believed the Sculpture to be a unique work and bargained accordingly, the Sculpture was grossly overvalued.

---

[33]*U.S. v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009); *see also Gandhi v. Sitara Capital Management, LLC,* 689 F.Supp.2d 1004, 1007 (N.D. Ill. 2010).
[34]*Tricontinental Indus. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007).
[35]*Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d at 251.
[36]The Fourth Affirmative Defense states that it "hereby incorporates the allegations of Count II" but because Count II concerns negligent misrepresentation, this Court assumes "Count II" is a clerical error.

Furthermore, defendant alleges that because it would not have purchased the Sculpture if it had known it was not unique, forcing it to purchase the Sculpture would be unconscionable.

To establish mutual mistake warranting rescission of a contract, the moving party must show that: (1) both parties were mistaken about a fact which materially affects the contract; (2) this mistake is of such grave consequence that it would be unconscionable for a court to enforce the contract; (3) the moving party made the mistake despite exercising reasonable care; and (4) the other party can be placed in the pre-contract status quo position.[37] Rule 9(b) of the Federal Rules of Civil Procedure requires that parties claiming fraud or mistake plead with particularity the who, what, when, where, and how of the misrepresentation.[38] Plaintiff contends that defendant failed to adequately plead two of the four requirements: unconscionability and reasonable care. Because the Rules of Civil Procedure do not require pleading every element of a claim,[39] but do require that the claim "at least plausibly suggest that the plaintiff is entitled to relief,"[40] we will analyze whether defendant adequately pleaded that the agreement was unconscionable and that defendant's reliance on plaintiff's statements of material fact was reasonable.

**1.    Unconscionability**

Defendant does not explicitly mention unconscionability, grave consequence, or even fairness in its proposed Amended Fourth Affirmative Defense or in Count III of its Counterclaim. But defendant argues that its allegations of the materiality of the Sculpture's originality and the difference in contract value and actual value of the Sculpture are sufficient to infer a pleading of unconscionability. Plaintiff counters that a difference in economic value is insufficient to support

---

[37] *Stewart v. Thrasher*, 242 Ill. App. 3d. 10, 18, 610 N.E. 2d 799, 805 (4th Dist. 1993).
[38] *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006).
[39] *Sanjuan*, 40 F.3d at 251.
[40] *See Truesdale,* 2008 WL 1968773 at 2.

unconsciousability.

The determination of whether a contract is unconscionable is a question of law, to be decided by the court.[41] A court can find that a contract is unconscionable because of procedural unconscionability, substantive unconscionability, or a combination of both.[42] Procedural unconscionability refers to conditions that deprived one of the parties of meaningful choice during the formation of a contract.[43] Substantive unconscionability relates to the terms of the contract.[44] Indica of substantive unconscionability include "contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity."[45] A contract may also be substantively unconscionable if "only one under delusion" would make the contract.[46] Commercial unreasonableness is a factor in substantive unconscionability but, by itself, does not necessarily constitute unconscionability.[47] Here, defendant does not argue that there was an imbalance in bargaining position; hence, the only unconscionability that it would be possible to derive from the pleadings is substantive unconscionability.

With that principle guiding us, we turn to the parties' arguments. Plaintiff asserts that defendant cannot allege any grave consequences from the contract that would make the contract unenforceable. He claims that the only possible grounds defendant could use is the difference in

---

[41]*Razor v. Hyundai Motor Am.,* 222 Ill.2d 75, 99 (2006).
[42]*Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d. 1, 21 (2006).
[43]*In re Marriage of Tabassum and Younis*, 377 Ill. App. 3d 761, 775, 881 N.E.2d 396, 409-10 (2nd Dist. 2007).
[44]*Kinkel*, 223 Ill. 2d at 28, 31 (citing *Maxwell v. Fidelity Fin. Svcs, Inc.*, 907 P.2d 51, 58, 184 Ariz. 82 (1995).)
[45]*Id.*
[46]*Kinkel*, 223 Ill. 2d at 31.
[47]*The Orig. Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 279 (7th Cir. 1992).

value between the Sculpture's actual worth and the contract value of the Sculpture. For support, plaintiff cites *Van Schouwen v. Connaught Corporation* where the court dismissed a counterclaim for mutual mistake, finding that "the mere pleading of an overpayment is not enough to support a finding of unconscionability."[48] Defendant, however, argues that *Van Schouwen* does not apply in all cases. Defendant then cites *John Burns Construction Company v. Interlake, Inc.*, where an Illinois appellate court held that a mutual mistake regarding soil conditions, which required the plaintiff to expend significant amounts of additional labor, was grounds for rescission of the contract.[49] In *John Burns*, the court implied that the difference in value between the labor contemplated and the labor required was a consideration in finding the contract unconscionable.[50] But defendant fails to mention an important distinction between *John Burns* and the present case. In *John Burns*, the defendant's representative made a post-contractual promise to pay the plaintiff for the additional work expended.[51] The court found that the defendant's action waived the contractual requirements for approving additional payments and found that the defendant's insistence on strictly adhering to the original contract was unconscionable.[52] Here we have no such post-contractual promise or reliance. Based on these two cases, then, defendant's alleged overpayment for the Sculpture would not, by itself, make the contract unconscionable.

Plaintiff next asserts that defendant can only claim overpayment, though ineffective, as grounds for unconscionability. But defendant contends that another ground for unconscionability

---

[48] 782 F. Supp 1240, 1244 (N.D. Ill. 1991).
[49] 105 Ill. App. 3d 19, 433 N.E.2d 1126 (1st Dist. 1982).
[50] *Id.* at 24.
[51] *Id.* at 25.
[52] *Id.*

is its belief that the Sculpture was unique when it contracted to purchase it. Though the Sculpture's uniqueness was material to the making of the contract, that alone would not likely be enough to satisfy the element of unconscionability.[53] We, nonetheless, believe that there is still the possibility that uniqueness in the context of art may be relevant, considered with the alleged overpayment. As noted by the Illinois Supreme Court in *Kinkel v. Cingular Wireless, LLC*, the more complete definition of unconscionability requires the examining of "fairness of the obligations assumed," whether the contract is so "one-sided as to oppress or unfairly surprise an innocent party," and the "significant cost-price disparity."[54] The specific question of whether a court can enforce the sale of an editioned artwork, thought to be unique at the time of contract, has not yet been addressed by Illinois courts. Illinois courts have, however, determined that the contract, and all of its alleged unfair features, must be considered as a whole when reviewing unconscionability.[55] We find plaintiff has sufficiently, at this stage, pleaded the possibility that the contract is unconscionable.

**2.    Reasonable Care**

Unlike unconscionability, defendant did explicitly plead reasonable care in his proposed Amended Fourth Affirmative Defense and in Count III of his Counterclaim.[56] Reasonable reliance on facts is a question of fact, not law, and can only be determined as a matter of law when no trier of fact could find that it was reasonable for the party to rely on those facts.[57] Illinois courts have implied that a party seeking rescission due to mutual mistake has a higher burden of reasonable care

---

[53]*Keller v. State Farm Ins. Co.*, 180 Ill. App. 2d 539, 548, 536 N.E.2d 194, 200 (5th Dist. 1989) (finding that "there is no dispute in the instant case that there was a mistake . . . and that it relates to a material feature of the contract[,] [however,] [p]laintiff presented no evidence as to whether enforcement of the contract would be unconscionable.")
[54]223 Ill. 2d. at 31.
[55]*Id*. at 35.
[56]Proposed Am. Counterclaim, dkt 39, exh. 1, ¶ 29.
[57]*Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

than one seeking rescission due to fraud. The court in *Diedrich v. Northern Illinois Publishing Company* found that:

> what is due care on the part of the plaintiff may be quite different when the plaintiff relied on a misrepresentation than when the plaintiff was merely mistaken. Accordingly, this court should not and cannot grant rescission for mutual mistake merely because if the defendant had been guilty of fraud, the court might have granted rescission.[58]

The above statement implies that the due care standard required for fraud does not equal the due care standard required for mutual mistake. It also implies that the overall standard for fraud is easier for a party to meet than the overall standard for mutual mistake. However, for both fraud and mutual mistake, a party does not have a duty to verify the information if the other party was in a better position to ascertain the facts.[59]

Plaintiff contends that Levene's August 21, 2008 emails foreclose the possibility of mutual mistake, citing to Federal Rule of Civil Procedure 10(c), which provides that all exhibits attached to a pleading are part of the pleading.[60] Plaintiff claims that because the August 21, 2008 emails indicate that Levene was uncertain at that time about the uniqueness of the Sculpture, defendant cannot prove that plaintiff and/or Levene became certain that the Sculpture was unique when the contract was formed. However, this line of reasoning is faulty. Plaintiff sent his invoice to defendant on September 4, 2008, two weeks later. It is not implausible that plaintiff and/or Levene, in the interim, found out that the Sculpture was unique.

Defendant also contends that it was reasonable for it to rely on the September 4, 2008 invoice as a statement of fact that the sculpture was unique. Defendant points out that plaintiff had a pre-

---

[58]*Diedrich v. N. Ill. Publ'g Co.*, 39 Ill. App. 3d 851, 860-61, 350 N.E.2d 857, 864 (2nd Dist. 1976)
[59]*Jordan v. Knafel*, 378 Ill. App. 3d. 219, 234-35 (1st Dist. 2007).
[60]Fed. R. Civ. P. 10(c).

existing relationship with Gupta and, therefore, was in a better position to know of the Sculpture's uniqueness. We agree. Plaintiff's agent, Levene, had a long working relationship with Gupta. Indeed, plaintiff's purchase of the Sculpture was partially due to this relationship. As an art collector, plaintiff would naturally be interested in the provenance of his piece and would want to know whether it was unique. Levene could have used this pretext as a way to find out the requested information. In contrast, defendant had no preexisting relationship with Gupta. Furthermore, two weeks had elapsed between the emails indicating Levene's uncertainty about the sculpture and the invoice. It is not unreasonable for defendant to believe that Levene had contacted Gupta regarding the uniqueness of the Sculpture during that time. Though plaintiff argues that defendant has inadequately pled the unconscionability and reasonable care elements, based on the pleadings, and what can be derived from them, it is plausible that defendant could show sufficient evidence to prove unconscionability and reasonable care.[61] Accordingly, plaintiff's motion to strike the Fourth Affirmative Defense and to dismiss Count III of the Counterclaim is denied.

**B.     First Affirmative Defense and Count I of Defendant's Counterclaim - Fraud**

Defendant's First Affirmative Defense and Count I of defendant's Counterclaim plead that the contract to purchase the Sculpture is unenforceable because the plaintiff fraudulently induced the contract's formation by stating that the Sculpture was a unique piece by not putting an edition number on the invoice. Defendant asserts that plaintiff and/or Levene knew that the Sculpture was not a unique piece when they sent the invoice to defendant. Defendant further asserts that it is customary in the art business for all non-unique pieces to have that indicated on the invoice, so defendant's reliance on the lack of indication on the invoice was reasonable.

---

[61]*See Sanjuan,* 40 F.3d at 251 (holding that at the pleading stage, the plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.").

A common law fraud claim in Illinois requires the following elements: (1) a false statement of material fact made by a party; (2) the party knew or believed the statement to be false; (3) the party intended for the statement to induce the other party to act; (4) the other party reasonably relied upon the statement's truth; and (5) the other party suffered damages as a result of relying on the statement.[62]

In moving to dismiss defendant's claims, plaintiff contends that defendant did not plead three of the five required elements: that plaintiff made any false statements of fact, that plaintiff knew the Sculpture was an edition, and that defendant reasonably relied on plaintiff's statements. As this Court has already evaluated the reasonableness of defendant's reliance on plaintiff's statements, we will herein only analyze plaintiff's claim that defendant pled neither the false statement component nor the knowledge component of fraud.

First, plaintiff asserts that because Levene made it clear in a previous email that she was not entirely certain about the Sculpture's uniqueness, the invoice cannot be taken as a statement of fact. In response, defendant asserts that the invoice was a statement of fact and because Levene is an art expert, her August 21, 2008 "opinion" can be read as a statement of fact.

For defendant to adequately plead fraud, he must be able to plead that plaintiff made an untrue statement of fact.[63] This pleading must have the possibility of being true within this case's universe of facts.[64] In general, a statement of opinion cannot form the basis of a fraud claim.[65] A statement of uncertain belief in a particular fact qualifies as an opinion for this purpose.[66] However, statements

---

[62]*Petrakopoulou v. DHR Int'l*, 626 F. Supp. 2d 866, 870 (N.D. Ill. 2009).
[63]*Petrakopoulou,* 626 F. Supp. 2d at 870.
[64]*Marshall-Mosby*, 205 F.3d at 326.
[65]*Miller v. Lockport Realty Group, Inc.*, 377 Ill.App.3d 369, 377, 878 N.E.2d 171, 178 (1st Dist. 2007).
[66]*Marino v. United Bank of Ill., N.A.*, 137 Ill. App. 3d 523, 527, 484 N.E.2d 935, 937 (2nd Dist. 1985).

which appear to be opinions when separated from the facts of the case may be considered to be statements of fact when considered in the context of the case; a court should look at the circumstances surrounding the opinion to determine if the plaintiff was justified in relying upon the statement as fact.[67]

There are two statements made by Levene that defendant alleges can be taken as statements of fact: the August 21, 2008 statement that Levene was not a hundred percent certain of the Sculpture's uniqueness but believed it to be true, and the September 4, 2008 invoice listing the Sculpture without mentioning that it was an edition. Plaintiff would have this Court take these two statements together without considering the time which elapsed between them. Indeed, if Levene had stated on the same day that she was not absolutely certain of the Sculpture's uniqueness, and had sent an invoice that, according to the practices in the art world indicated the Sculpture was unique, defendant's claim here might be unsustainable. Instead, because two weeks passed between the two statements, it is not on its face unreasonable for defendant to have believed that plaintiff and/or Levene learned more about the Sculpture during this time. Thus, defendant has properly pled the "false statement" element of fraud.

Second, plaintiff claims that defendant did not, and cannot, plead that plaintiff knew the Sculpture was an edition. This contention is at first confusing; defendant's proposed fraud defense and counterclaim state "[plaintiff], based on Ms. Levene's close relationship with the artist, either knew that they were false at the time the representation was made, or acted recklessly in not learning that they were false."[68] In its brief, plaintiff clarifies his position and states that defendant asserts no facts, in his complaint, to prove that plaintiff and/or Levene knew that the Sculpture was an edition.

---

[67]*Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 309, 773 N.E.2d. 84, 92 (1st Dist. 2002).
[68]Proposed Am. Counterclaim, dkt 39, exh. 1, ¶ 11.

But the pleading stage does not require proof, even for fraud.[69] As mentioned before, it is plausible that Levene contacted Gupta to ascertain the Sculpture's uniqueness during the two-week period between the emails indicating uncertainty and the invoice that, allegedly, indicated certainty. Because defendant has explicitly pled the knowledge element, and this element appears on its face to be plausible, defendant has properly pled knowledge. We, therefore, find that defendant has adequately pled all counts of its affirmative defense and counterclaim of fraud. Accordingly, plaintiff's motion with respect to the First Affirmative Defense and Count I of the Counterclaim are denied.

C.     **Count II of Defendant's Counterclaim - Negligent misrepresentation**

Count II of defendant's Counterclaim alleges that plaintiff was negligent in ascertaining whether or not the Sculpture was a unique piece and that this negligence makes the contract unenforceble. Plaintiff moves to dismiss this claim on the grounds that defendant has not adequately pled the element that plaintiff had the duty to provide defendant with accurate information. Defendant claims that Levene's position as an art dealer meant that she had a fiduciary duty to provide accurate information.

In Illinois, a claim for negligent misrepresentation must contain the following elements: (1) a false statement of material fact; (2) the party that stated the fact was careless or negligent in ascertaining the truth of that fact; (3) the party intended to induce the other party to act; (4) the other party acted while relying on the truth of the statement; (5) the other party was damaged by this reliance; and (6) the party that made the statement had a duty to communicate accurate information.[70] In its brief to dismiss this claim, plaintiff only argues the last element. So while we assume plaintiff still objects to the "false statement" and reliance elements, we have already discussed these and will,

---

[69]*Rolls-Royce*, 570 F.3d at 854-55.
[70]*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 334-35, 843 N.E.2d 327 (Ill. 2006).

accordingly, only discuss duty here.

Defendant does not explicitly state in Count II that either plaintiff or Levene owed him any duty. Instead, defendant asks this Court to infer from various facts in the pleading - the long relationship of trust between defendant and Levene and Levene's position as an art dealer - that Levene, and thus plaintiff as her principal, is in a fiduciary relationship with defendant. Plaintiff claims that he had no fiduciary duty to defendant and that even if he did, he would not be liable for economic damages to defendant.

In general, parties to a contract do not have fiduciary duties to each other under Illinois law.[71] If the party making a negligent misrepresentation claim seeks purely economic damages, the misstating party only has a duty to avoid negligently providing false information if the misstating party is in the business of supplying information for the guidance of others in their business transactions,[72] or if a government has imposed a duty onto the party through statutes or regulations.[73] Otherwise, the appropriate remedy is in contract law rather than in tort law.[74] However, principals are generally held vicariously liable for agents' breaches of fiduciary duty, even if the principals would not ordinarily owe a fiduciary duty to the plaintiff.[75]

Plaintiff claims that defendant cannot show that plaintiff owed defendant a fiduciary duty from a short purchasing relationship, noting that a fiduciary relationship requires "trust and

---

[71]*The Orig. Great Am. Chocolate Chip Cookie Co.*, 970 F.2d at 280.
[72]*First Midwest Bank*, 218 Ill. 2d at 354-55.
[73]*Zahorik v. Smith Barney, Harris Upham & Co.*, 664 F.Supp. 309, 313 (N.D. Ill. 1987).
[74]*Moorman*, 91 Ill. 2d 69, 435 N.E.2d 443 (Ill. 1982).
[75]*Dollie's Playhouse v. Nable Excavating, Inc.*, 2006 WL 839437 (S.D. Ill. 2006) (holding that plaintiff's vicarious liability suit against defendant, arising from defendant owner's breach of fiduciary duty to plaintiff, was potentially meritorious but barred under *res judicata*.); *but see Real Estate License Act of 2000*, 225 ILCS 454/15-60 (holding that real estate sellers are not held vicariously responsible for their brokers' breaches of fiduciary duty to buyers).

confidence in another so that the latter gained influence and superiority over the former."[76] Even if plaintiff did have a fiduciary duty, plaintiff relies on the Illinois Supreme Court's decision in *Moorman Manufacturing Company v. National Tank Company*, which addressed when a product defect relates to a consumer's expectation of value - and does not cause personal injury or property damage - the proper remedy is in contract law, not tort.[77] However, *Moorman* also acknowledges that economic loss is recoverable "where one who is in the business of supplying information for the guidance of others . . . makes negligent misrepresentations."[78] Plaintiff claims that its duty to provide accurate information on its goods is only that of an ordinary merchant and not a fiduciary duty.[79] In response to these claims, defendant alleges that part of the business of selling art is supplying information for others, and relies upon *Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, where the court held that a business that provides information for other parties has a duty to provide accurate information.[80]

Plaintiff may very well have owed defendant a duty to disclose. In a case that neither party cited, *Duchossois Industries, Inc. v. Stelloh*, a district court here denied a motion to dismiss a claim for negligent misrepresentation, finding that an art dealer in the business of preparing provenances had a fiduciary duty to buyers of artworks to provide them with accurate information on the artworks.[81] It is possible that Levene also prepares provenances. So the fiduciary duty to provide defendant with accurate information about the Sculpture could extend to plaintiff because plaintiff is Levene's principal. He may, therefore, be held liable for any alleged breach of this duty by Levene.

---

[76]*Farmer City State Bank v. Guingrich*, 139 Ill. App. 3d 416, 424, 487 N.E.2d 758 (4th Dist. 1985).
[77]91 Ill. 2d at 88.
[78]*Moorman*, 91 Ill. 2d at 88.
[79]*See Fox Assoc. v. Robert Half Int'l*, 334 Ill. App. 3d 90, 96, 777 N.E.2d 603 (1st Dit. 2002).
[80]68 Ill. App. 3d 75, 81, 385 N.E.2d 376, 381 (3rd Dist. 1979).
[81]1988 WL 2794 at *6 (N.D. Ill. 1988).

Thus, because Levene may have a fiduciary duty to defendant, defendant can and did adequately plead its counterclaim of negligent misrepresentation. This Court, therefore, denies the part of plaintiff's motion to dismiss Count II of the Counterclaim.

## V.     Conclusion

Though we deny plaintiff's motion, and allow these affirmative defenses the counterclaim to remain, we note that we do so reluctantly. Defendant's claims only barely survive. But, as we noted, at this stage the pleader receives "the benefit of imagination,"[82] and we find that defendant has pleaded factual allegations that go beyond "possibility" to "plausibility," which is all defendant is required to do at this stage.[83] Regarding the fraud and negligent misrepresentation claims, taking the allegations together - with the time lapse between the emails and the invoice two weeks later, and the nature of the dispute being that between an art dealer and an art collector - at least some discovery is warranted. As to mutual mistake and showing unconscionability, however, defendant will have an uphill battle. For this reason, the Court suggests the parties consider resolving this dispute through settlement. This case is set for status on July 27 at 9:30 a.m. to discuss setting this case for a conference with the Court. Plaintiff's Motion to Dismiss and/or Strike [dkt 43] is denied and defendant's motion for leave to file its Second Amended First Affirmative Defense, Fourth Affirmative Defense, and Counterclaim is granted [dkt 39].

**IT IS SO ORDERED.**

**ENTERED:** July 20, 2010                          _____
                                                                         SUSAN E. COX
                                                                         U.S. Magistrate Judge

---

[82]*Sanjuan,* 40 F.3d at 251.
[83]*See Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).